No. 13-1734

_____

# UNITED STATES COURT OF APPEALS

# FOR THE SEVENTH CIRCUIT

_____

**TERRANCE HUFF and
JON SEATON,**
        **Plaintiffs-Appellees,**

**v.**

**MICHAEL REICHERT,**
        **Defendant-Appellants.**

_____

**Appeal from the Unites States District Court
For the Southern District of Illinois
Case No. 12-596-MJR-PMF
The Honorable Judge Michael J. Reagan**

_____

# BRIEF AND REQUIRED SHORT APPENDIX OF
# DEFENDANT-APPELLANT, MICHAEL REICHERT

**Steven C. Giacoletto #6204424
Giacoletto Law Firm
1601 Vandalia Street
Collinsville, Illinois 62234
618/346-8841
618/346-8843 fax**

**Attorney for Defendant-Appellant,
Michael Reichert**

**CIRCUIT RULE 26.1   DISCLOSURE STATEMENT**

Appellate Court No: 13-1734

Short Caption: Terrance Huff and Jon Seaton v. Micheal Reichert

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R.  App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]   **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Michael Reichert

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Giacoletto Law Firm

(3)  If the party or amicus is a corporation:

i)  Identify all its parent corporations, if any; and

NA

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

NA

---

Attorney's Signature:  s/ Steven C. Giacoletto     Date: October 30, 2013

Attorney's Printed Name:  Steven C. Giacoletto

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** X   **No**

Address:  1601 Vandalia Street

Collinsville, Illinois  62234

Phone Number:  618-346-8841     Fax Number:  618-346-8843

E-Mail Address:  sgiacoletto@scglawoffice.com

rev. 01/08 AK

1

**APPELLANT BRIEF**

**Table of Contents**

Disclosure Statement……………………………………………………………..….1

Table of Contents…………………………………………………………………..….2

Table of Authorities………………………………………………….……….…...4

Statement of Subject Matter and Appellate Jurisdiction……………………….………6

Statement of the Issues…………………………………………………….………...8

Statement of the Case…………………………………………………….…….9

Statement of the Facts…………………………………………………….…...11

Summary of Argument………………………………………………………14

Argument……………………………………………………………………...15

   I.  Standard of Review…………………………………………………....15

   II.   Qualified Immunity Rules and Law………………………………………...15

   III.  The District Court erred in denying qualified immunity to the Defendant as to the seizure of the Plaintiffs…………………………………………………………16

      A. Argument Supporting Lawful Seizure……………………………………16

      B. Case Law Supporting Lawful Seizure……………………………………18

   IV.  The District Court erred in denying qualified immunity to the Defendant as to the alleged false arrests of the Plaintiffs……………………………………………...23

      A. Case Law Supporting Lawful Arrests……………………………………23

      B. Argument Supporting Lawful Arrests……………………………………...25

   V. The District Court erred in denying qualified immunity to the Defendant as to the search of the persons of the Plaintiffs…………………………………………….....26

A.  Case Law Supporting Probable Cause to Search…………………………………...26

B.  Argument Supporting Probable Cause to Search…………………………………...28

VI. The District Court erred in denying qualified immunity to the Defendant as to the

search of the vehicle of the Plaintiffs………..……………………………….…….....30

A.  Case Law Supporting Lawful Search of Vehicle…………………………………30

B.  Argument Supporting Lawful Search of Vehicle………………………….…...…30

Conclusion…………………………………………………………………………………38

Certificate of Compliance with FRAP Rule 32(a)(7)…………………………………….....39

Circuit Rule 31 (e)(1) Certification……………………………………………….…...…40

Certificate of Service…………………………………………………………………41

Circuit Rule 30(d) Statement………………………………………………………....42

Attached Required Short Appendix………………………………………………………...43

## TABLE OF AUTHORITIES

<u>Case Law</u>

*Anderson v. Creighton*, 483 U.S. 635 (1987)…………………………………………………15

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)………………………………………22, 30

*Berkemer v. McCarty*, 468 U.S. 420 (1984)………………………………………………...20

*Carroll v. Lynch*, 698 F.3d 561 (7th Cir. 2012)……………………………………………….30

*Denius v. Dunlap*, 209 F.3d 944 (7th Cir. 2000)…………………………………………...15

*Fleming v. Livingston County,* 674 F.3d 874 (7th Cir. 2012)……………………….……23, 25

*Florida v. Royer*, 460 U.S. 491 (1983)……………………………………………...……26

*Humphrey v. Staszak*, 148 F.3d 719 (7th Cir. 1998)…………………………………………15, 16

*Illinois v. Caballes*, 543 U.S. 405 (2005)………………………………………………..……31

*Jewett v. Anders*, 521 F.3d 818 (7th Cir. 2008) ………………………….……...6, 7, 15

*Johnson v. Crooks*, 326 F.3d 995 (8th Cir. 2003)…………………………...……….18, 19

*Matsushita Electric Industrial Co Ltd v. Zenith Radio Corporation*, 475 U.S. 574 (1986)……..30

*Nutrasweet Co. v. X-L Engineering Co*., 227 F.3d 776 (7th Cir. 2000)…………………………30

*Thayer v. Chiczewski*, 705 F.3d 237, 247 (7th Cir. 2012)…………………………...……16, 24

*United States v. Arvizu*, 534 U.S. 266 (2002)………………………………………………20

*United States v. Clark*, 657 F.3d 578 (7th Cir. 2011)………………………………………31

*United States v. Dowthard*, 500 F.3d 567 (7th Cir. 2007)……………………………...…..21

*United States v. Fiala*, 929 F.2d 285 (7th Cir. 1991)………………………………………30

*United States v. Ford*, 333 F.3d 839 (7th Cir. 2003)…………………………………………28

*United States v. Funds in Amount of $30,670.00*, 403 F.3d 448 (7th Cir. 2005)……………......31

*United States v. Ganser*, 315 F.3d 839 (7th Cir. 2003)…………………………………………31

4

*United States v. Jaramillo*, 891 F.2d 620 (7th Cir. 1989)…………………………………………..27

*United States v. Marrocco*, 578 F.3d 627 (7th Cir. 2009)……………………………………….31

*United States v. McDonald*, 453 F.3d 958 (7th Cir. 2006)………………………………16, 18, 21

*United States v. Pedroza*, 269 F.3d 821 (7th Cir. 2001)…………………………………………28

*United States v. Robinson*, 414 U.S. 218 (1973)………………………………………………...28

*United States v. Sayles*, Case No. 11-30162-WDS (S.D. Ill. 2012)……………………………31

*United States v. Serna-Barreto*, 842 F.2d 965, 966 (7th Cir. 1988)……………...……….26, 27, 29

*United States v. Taylor*, 596 F.3d 373 (7th Cir. 2010)……………………………………...…31

*United States v. White*, 81 F.3d 775 (8th Cir. 1996)………………………………………….20

*Valance v. Wisel*, 110 F.3d 1269 (7th Cir. 1997)………………………………………..22, 23

*Virginia v. Moore*, 553 U.S. 164 (2008)……………………………………………………..27, 29

*White v. Gerardot*, 509 F.3d 829 (7th Cir. 2007) …………………………………………...7

## Statutes

28 U.S.C. § 1291…………………………………………………………………………..6

28 U.S.C. § 1331…………………………………………………………………………..6

42 U.S.C. § 1983……………………………………………………………………….6, 9

625 ILCS 5/11-709(a) …………………………………………………………………...16, 43, 57

625 ILCS 5/11-804 …………………………………………………………….…16, 43, 57

**STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION**

I.    **District Court Jurisdiction**

The original complaint in this matter was filed in the District Court of Southern Illinois on May 8, 2012, against the City of Collinsville ("Collinsville") and Michael Reichert ("Reichert"), individually and in his capacity as a police officer and employee of the City of Collinsville.

The basis for jurisdiction in the District Court was 28 U.S.C. § 1331. Plaintiff alleged claims arising under federal law, including claims under 42 U.S.C. § 1983 alleging violations of the Fourth and Fourteenth Amendments.

II.    **Court of Appeals Jurisdiction**

The United States Court of Appeals for the Seventh Circuit has jurisdiction of this appeal pursuant to 28 U.S.C. § 1291.

The District Court entered an Order on March 14, 2013 denying Reichert's Motion for Summary Judgment Based on Qualified Immunity.

The Notice of Appeal was filed by Reichert on April 5, 2013.

II.    **Interlocutory Jurisdiction**

A district court's denial of summary judgment is not normally an appealable interlocutory order, but an exception to this general rule exists for a district court's denial of qualified immunity on summary judgment.  *Jewett v. Anders*, 521 F.3d 818, 821-2 (7th Cir. 2008).

In reviewing a district court's denial of qualified immunity, a reviewing court cannot "make conclusions about which facts the parties ultimately might be able to establish at trial." *Jewett v. Anders*, 521 F.3d 818, 822 (7th Cir. 2008).

6

Nor does a reviewing court reconsider the district court's determination that certain genuine issues of fact exist. *Jewett v. Anders*, 521 F.3d 818, 822 (7th Cir. 2008).

The jurisdiction of an interlocutory order extends only to those "abstract issues of law," which do not "depend on the outcome of a disputed factual question." *Jewett v. Anders*, 521 F.3d 818, 822 (7th Cir. 2008).

But the mere mention of disputed facts in an otherwise purely legal argument does not deprive the reviewing court of its jurisdiction. *White v. Gerardot*, 509 F.3d 829, 836 (7th Cir. 2007).

The key inquiry is whether the appellant's arguments necessarily depend upon disputed facts; if an argument is not dependent upon disputed facts, the court simply can disregard mention of the disputed facts and address the abstract issue of law. *White v. Gerardot*, 509 F.3d 829, 836 (7th Cir. 2007).

A reviewing "[c]ourt's jurisdiction extends to interlocutory appeals . . . challenging a district court's determination that a set of facts demonstrate a violation of clearly established constitutional law and preclude the defendants from proffering a qualified immunity defense." *Jewett v. Anders*, 521 F.3d 818, 822 (7th Cir. 2008).

## STATEMENT OF THE ISSUES

Whether the district court erred in denying, as a matter of law, that Reichert was not entitled to qualified immunity as to the Plaintiffs' allegations of:

    a.   unreasonable seizure;

    b.   false arrest;

    c.   unlawful search of their person; and

    d.   unreasonable search of their vehicle.

## STATEMENT OF THE CASE

The Complaint in this case was filed on May 8, 2012 in the District Court for the Southern District of Illinois.  In their Complaint, Plaintiffs invoked the First and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, Title 42 U.S.C. § 1983.

In the first four counts of their Complaint, both Huff and Seaton allege violations of their Fourth Amendment and Section 1983 rights resulting from:

> a.  unreasonable seizures;
>
> b.  false arrests;
>
> c.  unreasonable search of their persons; and
>
> d.  unreasonable search of their vehicle.

Count 5 of Plaintiffs' Complaint is a Monell claim directed against the City of Collinsville.  Count 6 is a State law claim against Riechert for intentional infliction of emotional distress.  Count 7 is a State law claim against the City in its capacity as respondeat superior to defendant Reichert.  Count 8 is a State law indemnification claim against the City in the event a judgment is entered against Reichert for damages.

Each of Counts 5-8 in the Plaintiffs' Complaint alleges the same set of facts as for Counts 1-4.  In order for any of Counts 5-8 to succeed, a judgment must be entered in favor of the plaintiffs on at least one of Counts 1-4.

This is an appeal from the District Court's Order entered on March 14, 2013 against Defendant-Appellant Reichert and in favor of Plaintiffs, Terrance Huff and Jon Seaton.

 After a certain amount of discovery, the City of Collinsville and Reichert filed a Motion for Summary Judgment and a Motion for Summary Judgment Based on Qualified Immunity on

July 16, 2012 and December 3, 2012, respectively.  The Plaintiffs responded in kind to each of the Motions and the issues raised were fully briefed by each of the parties.

The District Court denied the City's and Reichert's Motion for Summary Judgment and Motion for Summary Judgment Based on Qualified Immunity in a Memorandum and Order dated March 14, 2013.

In denying Reichert's Motion for Summary Judgment based on Qualified Immunity, the District Court ruled that Reichert was not entitled to qualified immunity as to the Plaintiffs' allegations of:

    a.  unreasonable seizure;

    b.  false arrest;

    c.  unlawful search of their person; and

    d.  unreasonable search of their vehicle.

The District Court's Order referenced that the same disputed material facts that precluded Reichert's Motion for Summary Judgment likewise defeated his Motion for Summary Judgment Based on Qualified Immunity.  (District Order p. 12).

Reichert's Notice of Appeal was timely filed on April 5, 2013 and this appeal was docketed on April 8, 2013.

## STATEMENT OF THE FACTS

Reichert submits as undisputed facts the events as related in the Traffic Stop Video (hereinafter cited as "TSV") and the deposition testimony of Plaintiffs Huff and Seaton, all of which is included in the District Court record.  (See Appendix and District Court Documents 13 and 36 for the TSV; District Court Document 36 for the Depositions of Huff and Seaton).

In addition, for the purposes of this appeal, Reichert accepts the Statement of Facts as related by the Honorable Judge Reagan in his Order of March 14, 2013 denying the Reichert's Motion for Summary Judgment Based on Qualified Immunity.  (See District Court Document 37).  The facts taken from the District Court's Order are as follows.

Plaintiffs were returning home to Ohio after attending a Star Trek convention in St. Louis, Missouri on December 4, 2011, which happened to be Huffs 40th birthday. Huff was driving the vehicle and Seaton was riding in the passenger seat. At approximately 8:10 a.m., Plaintiffs were stopped by Reichert on Interstate 55-70 in Collinsville, Illinois. Reichert walked to the passenger's side of Huffs vehicle and asked Huff for his driver's license, insurance and registration. Huff provided Reichert with all three documents. Reichert asked Huff if the address on his driver's license was current and Huff explained that the address on his driver's license is his mother's address, and his current address is 1158 Susan Drive, Hamilton, Ohio. Reichert then asked Huff to exit from his vehicle and step to the back while Seaton remained seated in the passenger seat. Reichert explained why he pulled Plaintiffs over, stating that Huff crossed half way over the center line in front of a truck without using a turn signal and then moved back into his own lane. Huff stated that he had problems with the lid on his drink cup. Reichert asked about Huffs criminal history, to which Huff replied that he had no outstanding warrants, but was arrested about 20 years ago. Reichert called police dispatch, which related Huff to have charges

of marijuana-based plant cultivation from 2001 and battery with injury. There was no criminal

history for Seaton. At some point during this encounter, Reichert requested a backup officer who

appeared on the scene. Reichert told Plaintiffs that he was letting them go with a warning and

shook Huffs hand.

Reichert then requested to speak to Seaton as he believed Seaton to be acting nervous and

apprehensive. Reichert mentioned to Huff that the Interstate Highway had been used by

motorists to carry drugs and guns, and asked Huff if he possessed any of those items in his

vehicle. Huff denied that there were any drugs, guns or large amounts of U.S. currency in his

vehicle. Reichert then asked Huff if he had any objection to Reichert searching the vehicle, to

which Huff replied that he would "just like to go on [his] way." Reichert then told Huff that he

was concerned over Seaton's demeanor and wanted to walk his drug-sniffing canine around the

car. Huff replied "that's fine," but then stated that he knew he did not swerve and believed he was

being profiled by Reichert.

Reichert then asked Huff for his consent to search his vehicle to which Huff stated that he

felt that he had no choice but to consent. Reichert replied that he was merely going to have the

canine sniff around the car to see if he would alert. Huff told Reichert that he could use the

canine but could not search the vehicle. Next, Reichert conducted a pat down search of Huff and

Seaton. He then brought the canine out and they circled the car together. When Reichert and the

canine got to the front of the vehicle, Reichert repeatedly said "show me where it's at" and the

canine barked. Reichert told Huff that the canine alerted by scratching at the front of the vehicle

and then barking. Reichert stated that the wind was blowing toward the front of Huffs vehicle.

Reichert then told Huff that he was going to search his car, and Huff responded " do what you

gotta do." Huff stated that, previously, a few individuals known to smoke marijuana have ridden

12

in his vehicle, but these individuals had never smoked while in Huffs vehicle. After the search of the vehicle, Reichert told Huff that there was marijuana "shake" in his car that needed to be vacuumed out. After approximately fifty minutes later, Reichert told Plaintiffs that they were free to leave.  (See District Court Document 37, pp. 2-4).

## SUMMARY OF ARGUMENT

It is Reichert's position that he should not be denied qualified immunity in the following instances.

1. When he reasonably believed that Plaintiff Huff committed a traffic offense, which gave him probable cause to stop the Plaintiffs, or "seize" them as they characterize the event; even if the Plaintiffs later claim they did not commit a traffic offense, or deny a traffic offense different from what they were originally stopped for.

2. When he had arguable probable cause to lawfully detain Plaintiffs, or even "arrest" them as they claim occurred, considering that: (i) Huff's driver's license did not have his current address; (ii) he had a history of marijuana cultivation; (iii) he had a history of battery with an injury charge; (iv) he had a temporary insurance card; (v) his passenger Seaton was acting nervous; and (vi) the stretch of highway the Plaintiffs were on was notorious for motorists carrying guns and drugs.

3. When under all of the circumstances, he had probable cause to quickly pat down search the Plaintiffs prior to having his canine sniff the air around their car.

4. When the Plaintiffs made allegations that Reichert falsely caused his canine to alert on their vehicle, even though the Plaintiffs admit they could not see or were not watching Reichert the entire time he walked his dog around their car; nor when the Plaintiffs have offered no expert testimony on the issue of a false alert.

The District Court denied Reichert qualified immunity on the same basis and reasoning that it denied him his standard Motion for Summary Judgment. But Reichert contends that a Traffic Stop Video speaks to undisputed facts of the event between the Plaintiffs and himself.

# ARGUMENT

## I.     Standard of Review

A district court's denial of summary judgment on qualified immunity grounds is reviewed de novo.  *Jewett v. Anders*, 521 F.3d 818, 822 (7th Cir. 2008).

A reviewing court does not evaluate the weight of the evidence, judge the credibility of witnesses or determine the ultimate truth of the matter; rather, it determines whether there exists a genuine issue of triable fact.  *Jewett v. Anders*, 521 F.3d 818, 822 (7th Cir. 2008).

"Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Jewett v. Anders*, 521 F.3d 818, 822 (7th Cir. 2008).

## II.     Qualified Immunity Rules and Law

"Qualified immunity protects public servants from liability for reasonable mistakes made while performing their public duties.  *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000).

Defeating qualified immunity requires (1) conduct violating the plaintiff's constitutional or statutory rights that is (2) clearly established at the time of the violation such that a "reasonable official would understand that what he is doing violates that right." *Denius v. Dunlap*, 209 F.3d at 950, quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

"The Supreme Court clarified the qualified immunity standard by explaining that [e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Humphrey v. Staszak*, 148 F.3d 719, 727 (7th Cir. 1998).   This

15

probable cause requires "more than bare suspicion, but need not be based on evidence sufficient to support a conviction nor even a showing that the officer's belief is more likely true than false." *Humphrey v. Staszak*, 148 F.3d 719, 727 (7th Cir. 1998).

When a defendant has raised a qualified immunity defense to a false-arrest claim, the court on appeal "will review to determine if the officer actually had probable cause or, if there was no probable cause, whether a reasonable officer could have mistakenly believed that probable cause existed." *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir.1998) (citations omitted).

### III.    The District Court erred in denying qualified immunity to the Defendant as to the seizure of the Plaintiffs.

#### A. Argument Supporting Lawful Seizure

"When an officer makes a stop based on a mistake of fact, we ask only whether the mistake was reasonable." *United States v. McDonald*, 453 F.3d 958, 962 (7th Cir. 2006).

"A police officer's probable cause determination depends on the elements of the applicable criminal statute." *Thayer v. Chiczewski*, 705 F.3d 237, 247 (7th Cir. 2012).

Reichert did not make a mistake of law in thinking that the Plaintiffs could not be stopped for leaving their driving lane and doing so without a turn signal. Improper lane usage and failure to change lanes without using a turn signal are both violations of Illinois state traffic laws. See 625 ILCS 5/11-709(a) and 625 ILCS 5/11-804.

16

It is irrelevant that the Plaintiffs later alleged in their complaint and stated in their depositions that Huff did not "swerve" or commit a traffic violation.   The only relevant test is whether what Reichert reasonably believed to have occurred could have been a traffic violation.

From the Traffic Stop Video, at the scene of the initial stop it is questionable whether Huff actually denied that his vehicle left his lane in front of a truck without a turn signal and then moved back into his lane.  When Reichert informed Huff why he was stopped, consider the demeanor in the Traffic Stop Video and replies of Huff regarding his brakes, that he had trouble problems with the lid on his drink cup, and that his cup collapsed.  (TSV 3:10; District Court Order Document 37, pp. 3, 5-6).

Not until about the 24:10 minute mark of the Traffic Stop Video did Huff begin to deny that he committed a traffic violation.  By that time, Huff's demeanor clearly became resentful of his having been inconvenienced with the additional questioning by Reichert.  Moreover, at that time the violation that Huff vehemently denied having committed was for "swerving"; which is different from switching lanes without using a turn signal, for which Reichert told him he was stopped.  Especially considering that "swerving" within one's own lane is not necessarily a traffic violation.

The Plaintiffs' seizure claim might have had more merit had Reichert stopped them for some reason that lacked legally probable cause, such as:

a.  Speeding at 65 mph when the speed limit was actually 70 mph.

b.  Driving the wrong way down a one-way street when in truth the street was two-way.

c.  Using a turn signal on a street with a slight curve.

d.  Driving on a suspended driver's license when the license is currently valid.

17

In all of these examples there is no judgment of the police officer at issue. In all of these scenarios there is no possible way for the driver of a vehicle to be guilty of a traffic violation. All of these situations are distinctly different from the simple "No, I didn't" allegations of Huff that he did not commit a traffic violation. These are the situations where the "mistakes" of a police officer are not reasonable and hence, there is no probable cause as a matter of law.

"Police can stop an automobile when they have probable cause to believe that the driver violated even a minor traffic law. Probable cause exists when an officer reasonably believes that a driver committed a traffic offense. In addition, under *Terry v. Ohio* [citations omitted], police may conduct a brief, investigatory traffic stop if they have reasonable suspicion based on articulable facts that a crime is about to be or has been committed. A stop and search can be reasonable even if the defendant did not actually commit an offense as long as the officer reasonably believed an offense occurred."   *United States v. McDonald*, 453 F.3d 958 (7th Cir. 2006).

## B. Case Law Supporting Lawful Seizure

### 1. *Johnson v. Crooks*

*Johnson v. Crooks*, 326 F.3d 995 (8th Cir. 2003), was a case with remarkably similar facts to the present action and was reversed on an interlocutory appeal after the trial court denied the defendant's motion to dismiss based on qualified immunity.  In that case, the defendant deputy sheriff followed the plaintiff for 11 miles, after which time he signaled her to stop and then approached her vehicle.  The defendant officer stated that he pulled the plaintiff over because she had crossed left of the center line and was concerned for her safety. The plaintiff immediately countered that she was careful to have not committed and traffic violations and that she was

profiled based on her race.  After verifying the plaintiff's identity and license validity in his

patrol car she was let go with a warning.  But the plaintiff again accused the defendant of racism

in stopping her vehicle and subsequent telephone conversations between the defendant and

plaintiff's husband did not dispel her notions.  Eventually the plaintiff sued the defendant for,

among other things, racial discrimination in relation to an unreasonable seizure and detention in

violation of the Fourth Amendment.  The defendant's motion to dismiss based on qualified

immunity was denied by the trial court.

The court in *Johnson v. Crooks* made note of several laws related to stops, searches, and

seizures that have similarly been cited throughout this Brief.  The trial court denied the

defendant's qualified immunity claim because the plaintiff maintained that she did not cross the

center line and so there was a disputed factual issue as to the probable cause to make the stop;

which could not be resolved at that stage of the proceedings according to the district court.  326

F.3d at 998.

Thus, the issue on appeal was whether the dispute over the plaintiff's crossing the center

line was material for purposes of defendant's qualified immunity defense to the Section 1983

claim for damages.  326 F.3d at 998.   More succinctly put, "if the motorist then brings a Section

1983 damage action, does her Fourth Amendment claim survive summary judgment and require

a jury trial simply because she avers she did not run the red light?"  326 F.3d at 998.

"We think not" was the answer of the court in *Johnson v. Crooks*.  326 F.3d at 998.

"[The] district court's analysis overlooked the investigatory aspect of traffic stops in

general and of this stop in particular. Because a brief traffic stop is a relatively minor intrusion

on the motorist's privacy interests, its Fourth Amendment reasonableness is judged by the

standard that applies to investigatory stops — whether 'the officer's action is supported by

19

reasonable suspicion to believe that criminal activity may be afoot.'" 326 F.3d at 998, citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

"An officer with reasonable suspicion may stop the automobile and may question the driver 'to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions.'" 326 F.3d at 998, citing *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984).

"Even routine traffic violations may require some investigation into the motorist's conduct or condition, followed by the exercise of judgment in deciding how to enforce the traffic laws in that situation. For example, an officer who initially stops a car for running a red light may then accept the motorist's explanation that the light was yellow when she entered the intersection and let the driver depart with an oral or written warning. At that point, the investigatory stop is complete." 326 F.3d at 998, citing *United States v. White,* 81 F.3d 775, 777-78 (8th Cir.), cert. denied, 519 U.S. 1011(1996).

In making its ruling limited to the Fourth Amendment issue, the Court explained that it was reasonable for the defendant to stop the plaintiff's car to determine if she was competent to drive when considering:

1. Crossing the center line of a highway was in violation of state statutes;
2. Driving while excessively fatigued or otherwise impaired is a safety issue and also in violation of state statutes.

The Court went on to mention that once the defendant was satisfied the plaintiff could continue her travel she was released with a warning and the investigatory stop was over. 326 F.3d at 999. "At a minimum," the Court state, "the defendant was entitled to qualified immunity from the plaintiff's Fourth Amendment claim because his actions were "objectively reasonable." 326 F.3d at 999.

### 2. *United States v. Dowthard*

Although it was a criminal case decided on a motion to suppress evidence, *United States v. Dowthard*, 500 F.3d 567 (7th Cir. 2007) is also instructive to the present case.  In that case, the defendant was denied a motion to suppress evidence after he was pulled over for not wearing a seatbelt.  Subsequently, the police officer discovered the driver had two outstanding warrants along with cocaine, cash, and a gun in his car.  Once the stop occurred the reasons for further detaining the defendant escalated, but the driver nevertheless contended that there was no probable cause to stop him to begin with because it was only the officer's "subjective belief" that the defendant was not wearing a seatbelt.  500 F.3d at 569.   To emphasize his argument of the officer's lack of good faith, the defendant further compared the officer's observations as having been done "with her eyes closed", but the Court found that to be "ridiculous."  500 F.3d at 569.

According to the *Dowthard* Court, the only argument available to the defendant is the factual question of whether it was reasonable for the officer to believe that she actually observed the defendant driving without wearing a seatbelt.  500 F.3d at 569.

To have probable cause, it need only be "reasonable" for the officer to conclude that the defendant was not wearing a seatbelt. 500 F.3d at 569.   Even if the officer's belief was incorrect, "[w]hen an officer makes a stop based on a mistake of fact, we ask only whether the mistake was 'reasonable' in order to determine if there was probable cause for the stop."  500 F.3d at 569, citing *United States v. McDonald*, 453 F.3d 958, 962 (7th Cir. 2006).

### 3. *Valance v. Wisel*

In *Valance v. Wisel*, 110 F.3d 1269 (7th Cir. 1997), this Court was presented with facts very similar to the present case. In that case, the plaintiff appealed the trial court's dismissal of his Section 1983 claim in favor of the defendant police officers.

In *Valance v. Wisel*, a police officer observed the plaintiff cross the centerline twice while driving through an S curve and subsequently pulled him over.  At that time the plaintiff indicated he had just awakened, may not have been paying attention, and that he understood how he could have went left of center.

Afterwards, the plaintiff filed his lawsuit under Section 1983 alleging that his original stop was pretextual and his detention and search were unreasonable under the Fourth and Fourteenth Amendments.  By way of his complaint and deposition the plaintiff argued the existence of disputed factual issues precluded the dismissal of his case, one of which was his denial that he actually crossed the center line.  The trial court dismissed the plaintiff's action finding, among other things, that the initial stop was lawful because the officer reasonably believed the plaintiff had committed a traffic violation.

In affirming the trial judge, the lower court ruled that "the existence of a factual dispute will not preclude summary judgment if the disputed fact is not material--that is, if resolution of the factual dispute would not affect the outcome of the suit under governing law.  110 F.3d at 1275-6, citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

The Valance Court stated that the plaintiff "cannot succeed in creating a factual dispute, however, solely by pointing to allegations in his pleading; he must instead produce **evidence** showing that there is a disputed issue for trial."  110 F.3d at 1275.  (Emphasis added).

22

The *Valance* Court was not persuaded by the plaintiff's attempt to create a disputed material fact by later stating in his complaint and his deposition that he never crossed the center line. 110 F.3d at 1276. In reference to his deposition, the *Valance v. Wisel* further determined that the plaintiff "believing" that he did not cross the center line was insufficient to require a trial on a claim of pretextual traffic stop. 110 F.3d at 1276. However, the Court did recall that upon being stopped by the defendant, the plaintiff indicated that he really did not know whether he crossed the center line but that he could "understand" how he may have done so. 110 F.3d at 1276.

## IV. The District Court erred in denying qualified immunity to the Defendant as to the alleged false arrests of the Plaintiffs.

### A. Case Law Supporting Lawful Arrests

In Count II of their Complaint, the Plaintiffs alleged that Reichert committed a false arrest by placing the Plaintiffs under arrest and not allowing them to leave scene without a warrant, probable cause, or other legal justification.

Hypothetically, if the Plaintiffs were indeed arrested, it was not without probable cause. Reichert's belief for probable cause does not have to be correct, or even more likely true than false, so long as it was reasonable. This permitted mistaken belief is referred to as "arguable probable cause" and is determined in the context of what a police officer in the same circumstances and with the same knowledge could reasonably have believed. *Fleming v. Livingston County,* 674 F.3d 874, 878-9 (7th Cir. 2012).

Those indications that gave Reichert "arguable probable cause" include:

1. Huff's driver's license address was not his current address;

2.  Huff was carrying a temporary proof of insurance card;

3.  Huff had a criminal history of marijuana-based plant cultivation;

4.  Huff had a history of a battery with injury charge;

5.  Seaton's nervous and apprehensive demeanor;

6.  That stretch of interstate highway is used by motorists to carry drugs and guns.

(District Court Order, pp. 2-3; TSV 1:25, 2:45, 11:35, 16:00, 21:37, 22:20).

"If a police officer had probable cause to arrest a plaintiff then a Fourth Amendment claim for false arrest is foreclosed.  To prevail on a claim of false arrest, [plaintiff] must show there was no probable cause for his arrest.  Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest." *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012).

"Probable cause exists if at the time of the arrest, the facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. It requires only that a probability or substantial chance of criminal activity exists; it does not require the existence of criminal activity to be more likely true than not true. Probable cause is a fluid concept that relies on the common-sense judgment of the officers based on the totality of the circumstances."  *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012).

"A police officer has probable cause to arrest when, at the moment the decision is made, the facts and circumstances within her knowledge and of which she has reasonably trustworthy information would warrant a prudent person in believing that the suspect had committed or was committing an offense.  This standard does **not require** that the officer's belief **be correct or**

**even more likely true than false**, so long as it is reasonable." *Fleming v. Livingston County,* 674 F.3d 874, 878-9 (7th Cir. 2012).  (Emphasis added).

As long as a police officer reasonably, although possibly mistakenly, believed that probable cause existed to arrest a plaintiff, then the officer is entitled to qualified immunity.  This standard is often dubbed "arguable probable cause." *Fleming v. Livingston County*, 674 F.3d 874, 880 (7th Cir. 2012).

"Arguable probable cause is established when a **reasonable police officer** in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law." *Fleming v. Livingston County*, 674 F.3d 874, 879-80 (7th Cir. 2012).  (Emphasis added).

## B. Argument Supporting Lawful Arrests

Although the plaintiffs certainly make the claim, it is not at all clear that they were ever arrested to begin with, much less subjected to a false arrest.  Reichert informned Huff that the vehicle was going to be detained for a canine sniff, but prior to that was seeking Huff's consent to search his vehicle.  Reichert explains to Huff that the Plaintiffs were free to leave, that if they want to leave they will have to leave their vehicle but that they will be given a ride somewhere since was not legal to walk on the interstate.  (TSV 24:35).

The Plaintiffs may have been left with the difficult decision of having to leave their car on the interstate while another police officer gave the Plaintiffs a ride from the scene.  But such an inconvenience does not equate to being the Plaintiffs being surrounded by police officers, shackled, being held at gunpoint, locked in a jail cell, or any other physical restriction that arises to an arrest of their person.  Indeed, had the Plaintiffs been pulled over next to a coffee shop

25

where they could have waited out the dog sniff and car search with relative comfort, then one might wonder whether the Plaintiffs would even be claiming they were arrested.

## V.     The District Court erred in denying qualified immunity to the Defendant as to the search of the persons of the Plaintiffs.

### A.  Case Law Supporting Probable Cause to Search

"An arrest is a profound and deeply resented interference with the liberty of the person, and to allow police to arrest people on anything less than a high degree of suspicion would restrict personal liberty more than has been thought justified by the needs of public security. When the restriction is less than that involved in a full-fledged arrest, the degree of suspicion required is less. If all that is involved is a police officer's accosting a person and asking him whether he would be willing to answer a few questions, the degree of suspicion required is zero. The intermediate case is that of the investigatory stop. If the police have enough suspicion to be able to articulate it ("**articulable suspicion**")--that is, if they have more than a pure hunch--they can stop a person briefly to ask him a few questions or to **pat him down** if they think he may have a weapon. They cannot take him down to the station house; that would be an arrest." *United States v. Serna-Barreto*, 842 F.2d 965, 966 (7th Cir. 1988), citing *Florida v. Royer*, 460 U.S. 491, 497-98 (1983) (plurality opinion).  (Emphasis added).

"The distinction between a stop and an arrest is one of degree, so it is not surprising that the courts have had difficulty in coming up with a bright-line test."  *United States v. Serna-Barreto*, 842 F.2d 965, 967 (7th Cir. 1988).

"Length of time seems the most important consideration in deciding whether a restraint is a mere stop or a full-fledged arrest, because it is a direct measure of the degree to which the

26

citizen's freedom of action has been interfered with. But it cannot be the only factor." *United States v. Serna-Barreto*, 842 F.2d 965, 967 (7th Cir. 1988).

"[W]e are trying to balance the individual's interest in being left alone by the police with the community's interest in effective enforcement of the criminal laws. The individual's interest is measured not only by the duration of the restraint but also by the fear or humiliation which it engenders. It makes a difference whether the police merely insist that the suspect stop and answer a few questions and submit to a **pat down** or whether they manacle him or conduct a strip search." *United States v. Serna-Barreto*, 842 F.2d 965, 967 (7th Cir. 1988).  (Emphasis added).

The interests justifying search are present whenever an officer makes an arrest. A search enables officers to safeguard evidence, and, most critically, to ensure their safety during "the extended exposure which follows the taking of a suspect into custody and transporting him to the police station." *Virginia v. Moore*, 553 U.S. 164, 177 (2008).

Once an officer makes a lawful arrest, the risks associated are "an adequate basis for treating all custodial arrests alike for purposes of search justification." *Virginia v. Moore*, 553 U.S. 164, 177 (2008).

For a *Terry* stop, the degree of suspicion is much less than for the probable cause needed for an arrest because the infringement of the individual's realm of protected privacy is much less. *Terry* stops need only reasonable suspicion when police have facts and circumstances considerably less than needed to prove wrongdoing by a preponderance of the evidence. *United States v. Jaramillo*, 891 F.2d 620, 626 (7th Cir. 1989).

27

**B. Argument Supporting Probable Cause to Search**

In Count III of their Complaint, the Plaintiffs allege that Reichert searched their persons without probable cause or other legal justification.

From the Traffic Stop Video and the District Court Order it appears that Reichert conducted a pat down search of Huff and Seaton. (See TSV 28:00; District Court Order, p.3). From their conduct and demeanor in the Traffic Stop Video, it would also appear that both of the Plaintiffs consented to the search of their persons. So much so that they, or at least Huff, lifted their arms for the search without even being prompted to do so by Reichert. (TSV 28:00).

Consent to the search of one's person would not require even "articulable suspicion." *United States v. Ford*, 333 F.3d 839, 843-4 (7th Cir. 2003), citing *United States v. Pedroza*, 269 F.3d 821 (7th Cir. 2001).

The U.S. Supreme has recognized that officers may perform searches incident to constitutionally permissible arrests in order to ensure their safety and safeguard evidence. *United States v. Robinson*, 414 U.S. 218 (1973).

So, if the Plaintiffs were indeed arrested as they claim, then the search of their persons was lawful because it was incident to a lawful arrest.

Thus, Count III of their Complaint raising the issue of unlawfully searching the persons of the Plaintiffs is resolved in favor of Reichert and that claim must fail as a matter of law.

In the alternative, if the Plaintiffs were not arrested, in spite of their allegations, then their Count II of their Complaint for false arrest should be dismissed. Then the issue becomes whether Reichert could legally search the Plaintiffs' persons in they were not being arrested.

From the Traffic Stop Video and District Court Order it appears that Reichert conducted a pat down search of Huff and Seaton. (See TSV 28:00; District Court Order, p.3). Based on

28

*United States v. Serna-Barreto*, a pat-down search would qualify as an "intermediate case" of an investigatory stop requiring only an "articulable suspicion". Paraphrasing *United States v. Serna-Barreto*, the pat-down search would **not** be an arrest typically brought about by putting the Plaintiffs in manacles, subjecting them to a strip, or even taking them "down to the station house."

If the Plaintiffs were not arrested, despite their allegations of being so, then Reichert would have needed an "articulable suspicion" that a crime had been or was being committed. From the Traffic Stop Video and the District Court's Order, from the perspective of a reasonable police officer under all of the circumstances, Reichert had probable cause to pat down the Plaintiffs based on the following:

1. Huff's driver's license address was not his current address;

2. Huff was carrying a temporary proof of insurance card;

3. Huff had a criminal history of marijuana-based plant cultivation;

4. Huff had a history of a battery with injury charge;

5. Seaton's nervous and apprehensive demeanor;

6. That stretch of interstate highway is used by motorists to carry drugs and guns.

(District Court Order, pp. 2-3; Traffic Stop Video minute marks 1:25, 2:45, 11:35, 16:00, 21:37, 22:20).

"When officers have probable cause to believe that a person has committed a crime in their presence, the Fourth Amendment permits them to make an arrest, and to search the suspect in order to safeguard evidence and ensure their own safety. *Virginia v. Moore*, 553 U.S. 164, 178 (2008).

29

**VI.    The District Court erred in denying qualified immunity to the Defendant as to the search of the vehicle of the Plaintiffs**

    **A.  Case Law Supporting Lawful Search of Vehicle**

A police officer who has made a lawful custodial arrest of the occupant of a vehicle may make a contemporaneous search of the passenger compartment of the vehicle and any containers therein. *United States v. Fiala*, 929 F.2d 285, 288 (7th Cir. 1991).

"Once the moving party puts forth evidence showing the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute. Mere metaphysical doubt as to the material facts is not enough." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012).

"[T]he issue of fact must be 'genuine.'  When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.  In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial.  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." *Matsushita Electric Industrial Co Ltd v. Zenith Radio Corporation*, 475 U.S. 574, 586-7 (1986).  (Citations omitted).

Furthermore, a factual dispute is "genuine" for summary judgment purposes only when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).

"If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Nutrasweet Co. v. X-L Engineering Co*., 227 F.3d 776 (7th Cir. 2000), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250 (1986).

While a court in review of a summary judgment must construe all facts in the light most favorable to the non-moving party, it is "not required to draw every conceivable inference from the record." *United States v. Funds in Amount of $30,670.00*, 403 F.3d 448, 454 (7th Cir. 2005).

"A positive alert by a trained drug dog gives rise to probable cause to search a vehicle." *United States v. Marrocco*, 578 F.3d 627, 638 (7th Cir. 2009).

A canine's alert can elevate a reasonable suspicion to probable cause. *United States v. Ganser*, 315 F.3d 839, 844 (7th Cir. 2003).

A dog sniff does not change the character of a traffic stop that is lawful at its inception and done in a reasonable manner, unless the dog sniff itself infringed respondent's constitutionally protected interest in privacy. *Illinois v. Caballes*, 543 U.S. 405, 408 (2005).

A dog sniff of the exterior of a car while the driver was lawfully seized for a traffic violation, even if an intrusion on respondent's privacy expectations, does not rise to the level of a constitutionally cognizable infringement. *Illinois v. Caballes*, 543 U.S. 405, 409 (2005).

"A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment. *Illinois v. Caballes*, 543 U.S. 405, 410 (2005).

The use of a drug sniffing dog during a traffic stop does not constitute a search and so in itself does not violate the Fourth Amendment, although it may impact whether a search is reasonable if it causes a delay. *United States v. Taylor*, 596 F.3d 373, 377 (7th Cir. 2010).

When police officers have probable cause to believe an individual was transporting drugs in a vehicle, then they have a sufficient basis to search the vehicle without a warrant. *United States v. Sayles*, Case No. 11-30162-WDS (S.D. Ill. 2012), citing *United States v. Clark*, 657 F.3d 578 (7th Cir. 2011).

**B. Argument Supporting Lawful Search of Vehicle**

In Count IV of their Complaint, the Plaintiffs claim that there was no probable cause to search their vehicle because Reichert triggered his canine to **false** alert while sniffing the outside of their vehicle, not that there was an absolute failure of the drug dog to alert. (Complaint, paragraphs 67-69).

The Plaintiffs do not appear to be alleging that a canine may not sniff the outside of their vehicle; nor that if the dog did properly alert, then a search of the vehicle would still be illegal.

From their depositions, the Plaintiffs' testimony indicates that they were not able to see Reichert's canine alert when searching their vehicle. For instance, Plaintiff Huff testified as follows:

```
23        Q  Did you see the dog alert to your car?
24        A  I heard the dog bark, but I couldn't see
25  anything because he was at the front of the vehicle and I
 1  could hear Reichert yelling.
 2        Q  Okay.  I was just going to ask you next
 3  where was the dog when it barked?
 4        A  It was in the front of the vehicle.
 5        Q  Okay.  Was that at the initial part when
 6  they started the sniff or was it after they did a circuit
 7  of the car?
 8        A  No, he had already gone around -- he was at
 9  the front of the car for a while.  Nothing happened.  He
10  came on around and went back to the front and I tried to
11  see and then, you know, was trying to pay attention to
12  this and traffic because I didn't want to step back too
13  far and get killed because I've seen where they had
14  traffic accidents and unfortunately men and women of law
15  enforcement and pastors have lost their lives to that type
16  of thing, so I was trying to be wary of that while trying
17  to keep an eye on what was going on in my vehicle.
18        Q  Okay.  How many times did you hear the dog
19  bark?
```

```
20        A   Once or twice, I guess, and it was
21   successive like ruff-ruff.
22        Q   Okay.
23        A   Or I could do it -- (barking) -- if that
24   helps you.
25        Q   Maybe, if we had audio.  So we had two
 1   successive then and just one instance of --
 2        A   Yeah.
 3        Q   -- two successive barking?
 4        A   The second time around.  He went all the way
 5   around the car and then the car -- the dog did not alert,
 6   which they called it, but the dog did not bark on the
 7   first time.  He barked when he took it around the second.
 8        Q   Did you ever see the dog paw at the car or
 9   on the ground?
10        A   No.
11        Q   Did you ever see the dog sit down?
12        A   No.
13        Q   Any other different actions by the dog?
14        A   Just him jumping on the officer.
15        Q   Which is on the video?
16        A   Yeah.
```

(Huff Deposition, pp. 74-76; District Court Document 36).

Plaintiff Seaton's testimony as to his witnessing the canine alert is likewise vague:

```
21        Q   You heard what Mr. Huff indicated where
22   everybody was standing at that time?
23        A   Yes.
24        Q   Was that accurate --
25        A   Yes.
 1        Q   -- what he related?
 2        A   Yes.
 3        Q   Do you know what it means when a
 4   drug-sniffing dog alerts?
 5        A   Now I do.
 6        Q   Okay.  Did you see the dog alert to
 7   Mr. Huff's vehicle?
 8        A   I heard a bark in front of the car.
```

33

```
 9        Q  Was that the first time he went to the front
10  of the car --
11        A  No.
12        Q  -- or the second?
13        A  No, the second time.
14        Q  You got to let me finish the question.
15        A  I'm sorry.
16        Q  I know you know what's coming, but --
17  especially after seeing this once, but -- so was that the
18  first time or second time that the dog went to the front
19  of the car?
20        A  The second time.
21        Q  Okay, and it was two quick repetitive barks
22  like Mr. Huff indicated?
23        A  Yes.
24        Q  Okay, did you see the dog sit down at any
25  time when he sniffed?
 1        A  No.
 2        Q  How about scratch or paw?
 3        A  No.
 4        Q  After -- while the dog-sniff is over or
 5  Officer Reichert puts the dog away and then he's talking
 6  to Mr. Huff?
 7        A  Yes.
```

(Seaton Deposition, pp. 37-39; District Court Document 36).

There is no expert testimony in the record to the effect that Reichert's canine did not alert

or that he was triggered to false alert.  The Plaintiffs had acquired some data as to the reliability

of Reichert's canine, but this was apparently not made part of the record.  (District Court Order,

pp. 10-11).

Besides not seeing Reichert's canine alert, false or otherwise, the Plaintiffs' both relate in

their depositions how they were not able to watch the entire time the dog sniffed their car, as

follows:

(Huff Testimony)

2        Q   Okay.  While the dog is sniffing the car
3   with Officer Reichert, where are you standing?  You're off
4   camera, so where are you standing?
5            A   I'm at the left quarter panel of Reichert's
6   cruiser stepped slightly off -- **I tried to observe as much
7   of the canine search as I could.**

(Huff Deposition, page 73; District Court Document 36).  (Emphasis added).

(Huff Testimony)

16       Q   Okay.  **All three of you were watching the
17  dog sniff the car?**
18       A   **No, I was watching the dog.**  There was
19  actually an exchange between Officer Hunt and Jon Seaton
20  where Hunt kept asking Jon if -- something like if he had
21  a problem and then raised his voice.  He said you think
22  I'm pretty, boy?  Jon says no, not really; do you think
23  I'm pretty; and I said whoa, fellows.  I said calm down
24  here.  I was like Josh, look, I'm not gay or anything,
25  man, but I think you're an attractive guy and if I was a
1   girl, I definitely would date you.
2        Q   What did he respond to that?
3        A   That made him very uncomfortable.
4        Q   Did he respond to it at all?
5        A   No.
6        Q   Any other discussions that you guys had?
7        A   Actually we had -- after kind of -- that
8   wore off of -- the impact of that wore off of Mr. Hunt, he
9   started asking us about the Science Center and we actually
10  had a pretty pleasant conversation about the exhibits that
11  they had there, and he said there were a lot of cool
12  events.  He seemed like at that point, you know, once he
13  revealed himself as an individual instead of just a police
14  officer who was doing what he was doing, he actually
15  seemed like a pretty nice guy.  Likable.
16       Q   Okay.  Was this conversation with Officer
17  Hunt going on while the dog was sniffing or while the car
18  was being searched?

35

19        A   Well, conveniently like when the -- right
20   before the dog bark was when Officer Hunt tried to provoke
21   Mr. Seaton with his comment about do you think I look
22   pretty, so --
23        Q   Did you see the dog alert to your car?
24        A   **I heard the dog bark, but I couldn't see**
25   **anything because he was at the front of the vehicle and I**
1    **could hear Reichert yelling.**

(Huff Deposition, pp. 73-75; District Court Document 36).  (Emphasis added).

(Seaton Testimony)

14        Q   During the dog-sniff, did you and Officer
15   Hunt have any conversation?
16        A   Yes.
17        Q   And what was the conversation?
18        A   He tried to provoke me.
19        Q   How did he do that?
20        A   While I walked up, it was cold and at that
21   time I knew that the stop was bogus.  I was a little bit
22   irritated.  It was morning and he asked me what my problem
23   was, and I told him I was cold, so on the highway
24   there's -- you know, trucks are whizzing by, 60 plus miles
25   an hour.  It's drizzling, freezing raining out.  It was
1    cold.  Then he -- I was perplexed because then he -- he
2    asked me what are you looking at, and I said I'm not
3    looking at nothing.  He's like what are you looking at; do
4    you think I'm pretty?  I was like I'm not looking at
5    nothing; do you think I'm pretty; and then Huff
6    interjected and said that -- he's like I'm not a
7    homosexual, but, you know, if I was a female, I'd find you
8    attractive.  He was trying -- basically trying to smooth
9    the situation over, and I told Officer Hunt, I was like
10   look, if it doesn't pertain to the stop, I don't want to
11   talk to you.
12        Q   Okay.
13        A   And me and Mr. Hunt -- Officer Hunt did not
14   have a conversation after that.
15        Q   How about after that Officer Hunt and
16   Mr. Huff?

17        A   They had a conversation regarding the
18    Science Center and about the exhibits.
19        Q   Anything else that they talked about?
20        A   No.

(Seaton Deposition, pp. 36-37; District Court Document 36).

Finally, there is some indication from the Traffic Stop Video that even Huff is able to rationalize why the canine alerted to his car.  In the Traffic Stop Video, Huff admits that:

1.   there have been marijuana smokers in his car, including a business partner that likes to smoke a lot of pot; and,

2.   his business partner does not smoke pot his vehicle but is a regular user, followed by a discussion with Reichert that residual odors from other users may be what drug dog detected.

(Traffic Stop Video, minute mark 33:48 and 34:10).

So at the end of it all, the Plaintiffs' allege that Reichert caused his canine to false alert, but still:

1.   they did not see the dog alert one way or the other;

2.   they could not see the entire dog sniff because their own car blocked their view;

3.   they did not watch the entire dog sniff while talking with the other Officer Hunt;

4.   they admitted that a business partner who smokes a lot of marijuana rides in the car, but did not smoke in the vehicle; and,

5.   there is no expert testimony in the record that the dog false alerted.

The evidence offered by the Plaintiffs that Reichert triggered his canine to false alert is either nothing more than unsubstantiated guesswork and another exercise in the proverbial "he said, [s]he said" debate.

**CONCLUSION**

For the foregoing reasons the District Court's Order denying Reichert's Motion to Dismiss Based on Qualified Immunity should be reversed on Counts I-IV and this cause be remanded for further proceedings in accordance therewith.

s/ Steven C. Giacoletto
Steven C. Giacoletto #6204424
Giacoletto Law Firm
1601 Vandalia Street
Collinsville, Illinois 62234
618/346-8841
618/346-8843 fax

Attorney for Defendant-Appellant,
Michael Reichert

**CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(A)(7)**

This certifies that this brief complies with the type-volume limitation of Fed.R.App.P. 32(a)(7)(B) because this brief contains 10,004 words, excluding the parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii).

<u>s/ Steven C. Giacoletto</u>
Steven C. Giacoletto #6204424
Giacoletto Law Firm
1601 Vandalia Street
Collinsville, Illinois 62234
618/346-8841
618/346-8843 fax
Attorney for Defendant-Appellant,
Michael Reichert

## CIRCUIT RULE 31 (e)(1) CERTIFICATION

The undersigned hereby certifies that I have filed electronically, pursuant to Circuit Rule

31 (e), versions of the brief and all of the appendix items are available in a non-scanned PDF

format.

s/ Steven C. Giacoletto
Steven C. Giacoletto #6204424
Giacoletto Law Firm
1601 Vandalia Street
Collinsville, Illinois 62234
618/346-8841
618/346-8843 fax
Attorney for Defendant-Appellant,
Michael Reichert

**CERTIFICATE OF SERVICE**

I hereby certify that on October 31, 2013, I electronically filed the foregoing with the

Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the

CM/ECF system. I certify that all participants in the case are registered CM/ECF users

and that service will be accomplished by the CM/ECF system.

<u>s/ Steven C. Giacoletto</u>
 Steven C. Giacoletto #6204424
 Giacoletto Law Firm
 1601 Vandalia Street
 Collinsville, Illinois 62234
 618/346-8841
 618/346-8843 fax
 Attorney for Defendant-Appellant,
 Michael Reichert

41

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), counsel certifies that all material required by Circuit Rule

30(a) and (b) are included in the appendix

s/ Steven C. Giacoletto
 Steven C. Giacoletto #6204424
Giacoletto Law Firm
1601 Vandalia Street
Collinsville, Illinois 62234
618/346-8841
618/346-8843 fax
Attorney for Defendant-Appellant,
Michael Reichert

**ATTACHED REQUIRED SHORT APPENDIX**

**Table of Contents**

District Court Memorandum and Order dated March 14, 2013…………………………..…...44

Illinois State Statutes-Motor Vehicle Code

      Section 11-709(a) (625 ILCS 5/11-709(a))………………………………………………57

      Section 11-804(a) (625 ILCS 5/11-804(a))…………………………………………...…....57

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TERRANCE HUFF AND JON SEATON, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) CIVIL NO. 12-596-MJR |
| | ) |
| CITY OF COLLINSVILLE AND | ) |
| COLLINSVILLE POLICE OFFICER | ) |
| MICHAEL REICHERT, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

### I.    BACKGROUND

This matter is before the Court on Defendant City of Collinsville and Defendant Michael Reichert's (collectively "Defendants") Motion for Summary Judgment (Doc. 13) and Motion for Summary Judgment Based on Qualified Immunity (Doc. 25). The case stems from an automobile stop that police officer Michael Reichert made of the Plaintiffs Terrance Huff ("Huff") and Jon Seaton ("Seaton"), which resulted in the issuance of a warning.   Defendants seek summary judgment on all of the Plaintiff Huff and Seaton's claims, which include 42 U.S.C. § 1983 claims for unreasonable seizure (Count 1), false arrest (Count 2), unreasonable search of person (Count 3), unreasonable search of vehicle (Count 4), and a *Monell* claim against the City of Collinsville (Count 5).   Defendants also seek summary judgment on Plaintiffs' state law tort claim of intentional infliction of emotional distress (Count 6), also claiming *respondeat superior* against City of Collinsville (Count 7) and indemnification

pursuant to 745 ILCS 10/9-102 (Count 8). Defendants also assert a qualified immunity defense in

their second Motion for Summary Judgment Based on Qualified Immunity (Doc. 25). The Court has

duly considered Defendants' arguments and Plaintiffs' response brief and supplemental response

brief. Because a raft of disputed material facts exists, both Defendants' motions for summary

judgment (Docs. 13, 25) are **DENIED**.

## II.    STANDARD OF REVIEW

The standard applied to summary judgment motions under Federal Rule of Civil Procedure

56 is well-settled and has been succinctly stated as follows:

> Summary judgment is proper when the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with the affidavits, if any, show
> that there is no genuine issue as to any material fact and that the moving party is
> entitled to a judgment as a matter of law. In determining whether a genuine issue
> of material fact exists, [the Court] must view the record in a light most favorable
> to the nonmoving party. Because the primary purpose of summary judgment is
> to isolate and dispose of factually unsupported claims, the nonmovant may not
> rest on the pleadings but must respond, with affidavits or otherwise, setting forth
> specific facts showing that there is a genuine issue for trial.… A mere scintilla of
> evidence in support of the nonmovant's position is insufficient; a party will be
> successful in opposing summary judgment only when it presents definite,
> competent evidence to rebut the motion.

*Albiero v. City of Kankakee*, 246 F.3d 927, 931-32 (7th Cir. 2001) (citations and quotations omitted).

## III.   STATEMENT OF FACTS

Plaintiffs were returning home to Ohio after attending a Star Trek convention in St. Louis,

Missouri on December 4, 2011, which happened to be Huff's 40th birthday. Huff was driving the

vehicle and Seaton was riding in the passenger seat. At approximately 8:10 a.m., Plaintiffs were

stopped by Reichert on Interstate 55-70 in Collinsville, Illinois. Reichert walked to the passenger's

side of Huff's vehicle and asked Huff for his driver's license, insurance and registration. Huff

provided Reichert with all three documents. Reichert asked Huff if the address on his driver's license

was current and Huff explained that the address on his driver's license is his mother's address, and his current address is 1158 Susan Drive, Hamilton, Ohio. Reichert then asked Huff to exit from his vehicle and step to the back while Seaton remained seated in the passenger seat. Reichert explained why he pulled Plaintiffs over, stating that Huff crossed half way over the center line in front of a truck without using a turn signal and then moved back into his own lane. Huff stated that he had problems with the lid on his drink cup. Reichert asked about Huff's criminal history, to which Huff replied that he had no outstanding warrants, but was arrested about 20 years ago. Reichert called police dispatch, which related Huff to have charges of marijuana-based plant cultivation from 2001 and battery with injury. There was no criminal history for Seaton. At some point during this encounter, Reichert requested a backup officer who appeared on the scene. Reichert told Plaintiffs that he was letting them go with a warning and shook Huff's hand.

Reichert then requested to speak to Seaton as he believed Seaton to be acting nervous and apprehensive. Reichert mentioned to Huff that the Interstate Highway had been used by motorists to carry drugs and guns, and asked Huff if he possessed any of those items in his vehicle. Huff denied that there were any drugs, guns or large amounts of U.S. currency in his vehicle. Reichert then asked Huff if he had any objection to Reichert searching the vehicle, to which Huff replied that he would "just like to go on [his] way." Reichert then told Huff that he was concerned over Seaton's demeanor and wanted to walk his drug-sniffing canine around the car. Huff replied "that's fine," but then stated that he knew he did not swerve and believed he was being profiled by Reichert.

Reichert then asked Huff for his consent to search his vehicle to which Huff stated that he felt that he had no choice but to consent. Reichert replied that he was merely going to have the canine sniff around the car to see if he would alert. Huff told Reichert that he could use the canine but could not search the vehicle. Next, Reichert conducted a pat down search of Huff and Seaton. He then

brought the canine out and they circled the car together. When Reichert and the canine got to the front of the vehicle, Reichert repeatedly said "show me where it's at" and the canine barked. Reichert told Huff that the canine alerted by scratching at the front of the vehicle and then barking. Reichert stated that the wind was blowing toward the front of Huff's vehicle. Reichert then told Huff that he was going to search his car, and Huff responded "do what you gotta do." Huff stated that, previously, a few individuals known to smoke marijuana have ridden in his vehicle, but these individuals had never smoked while in Huff's vehicle. After the search of the vehicle, Reichert told Huff that there was marijuana "shake" in his car that needed to be vacuumed out. After approximately fifty minutes later, Reichert told Plaintiffs that they were free to leave.

## IV.   DISCUSSION

Plaintiffs Huff and Seaton brought this action pursuant to 42 U.S.C. § 1983 alleging that their civil rights were violated when Reichert and the City of Collinsville unreasonably searched and seized Plaintiffs' persons, committed false arrest, and searched Huff's vehicle without probable cause. Plaintiffs also bring a state law tort claim against Defendants for intentional infliction of emotional distress.

### A. Unreasonable Seizure

Under the Fourth Amendment, officers may stop a car on reasonable suspicion that the driver has violated the law. *See United States v. Riley*, 493 F.3d 803, 808-09 (7th Cir. 2007). "Reasonable suspicion is more than a hunch but less than probable cause and 'considerably less than a preponderance of the evidence.'" *U.S. v. Bueno*, 703 F.3d 1053, 1062 (7th Cir. 2013) (citing *Jewett v. Anders*, 521 F.3d 818, 823 (7th Cir. 2008). Reasonableness "calls for an objective inquiry into all of the circumstances known to the officer at the time" that he detained the defendant. *United States v. Snow*, 656 F.3d 498, 500 (7th Cir. 2011). The constitutional reasonableness of a traffic stop does not

Page 4 of 13

depend on the subjective motivations of the individual officer involved. *See Jackson v. Parker*, 627 F.3d 634, 638 (7th Cir. 2010) (citing *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)). "Instead, the Fourth Amendment's focus on reasonableness dictates an objective analysis, under which, 'the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify the action.'" *Id.*

The Fourth Amendment allows pretextual traffic stops so long as they are based upon an observed violation of a traffic law. *See Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d (1996). Here, Plaintiffs argue that Reichert's decision to pull them over was pretextual and not based on any observed violation of traffic law. More specifically, Plaintiffs argue that Huff never crossed the center line while driving on the day in question. In response, Defendants cite to a Seventh Circuit case, *Valance v. Wisel*, 110 F.3d 1269 (7th Cir. 1997), for the proposition that Plaintiffs' allegations are insufficient to create a factual dispute on summary judgment.

In *Valance*, an officer observed the plaintiff's automobile cross the center line twice while navigating an "S" curve and so suspected the driver of being under the influence. *Valance*, 110 F.3d at 1272. The court held that the plaintiff's deposition testimony stating that he did not believe he crossed the center line at the "S" curve was less than definitive and somewhat inconsistent with statements he made at the time he was stopped by the officer. *Id.* at 1276. Thus, the court found that a reasonable jury could only determine that the plaintiff really did not know whether he crossed the center line or not and this was not sufficient for his claim of a pretextual traffic stop. *Id.*

In the present case, Reichert claims that he saw Huff cross half way over his driving lane in front of a truck without using a turn signal and then move back into his own lane. Defendants assert in their motion that Reichert told Huff of this and Huff "explained his driving in that he had a problem

Page 5 of 13

with his brake, problems with a lid on his cup, and that his cup collapsed." (Doc. 21). If unrebutted, this evidence would establish the reasonable suspicion necessary for a traffic stop. *See United States v. Smith*, 80 F.3d 215, 219 (7th Cir. 1996) (officer had probable cause to stop vehicle that had been straddling lanes and had failed to signal before turning).

Huff, however, alleges in his complaint that he never crossed the center line. (*See* Doc. 2). As the court made clear in *Valance*, this allegation in a plaintiff's complaint, without more, is insufficient to create a factual dispute on summary judgment. *See Valance*, 110 F.3d at 1275 ("such an allegation is insufficient to create a factual dispute on summary judgment once the moving parties have come forward with evidence indicating that they are entitled to judgment as a matter of law."). Thus, Huff must come forward with evidence supporting the complaint's assertion, which he does. FED.R.CIV.P. 56(e); *Valance*, 110 F.3d at 1275.

To support this assertion, Huff cites to the video footage taken of the traffic stop by a camera that was located on Reichert's squad car. The Court has watched this video, and finds that on the day of the occurrence Huff specifically denied swerving into the next lane. Specifically, Huff stated that "[y]ou pulled me over for swerving, and I know that I did not swerve." (Doc. 22-4). He went on to indicate his belief that he was being "profiled." (Doc. 22-4). This assertion is also supported by Huff's sworn affidavit which states that he did not swerve as claimed by Reichert. (Doc. 22-3). Further, Huff adamantly testified in his deposition that he "did not break [his] lane of travel." (Doc. 35-2).

Although Defendants urge the Court to treat Huff's statement indicating that he had an issue with his cup as an admission that Huff swerved, this statement is called into question by Huff's statement -made a matter of minutes later- when he said that he knew he did not swerve. The Court is satisfied that the Huff's statements made during the traffic stop as evidenced by the video, as well as

Page 6 of 13

those alleged in his complaint, affidavit and deposition, create a genuine issue of material fact as to whether Reichert actually perceived a traffic violation. *See Keri v. Board of Trustees of Purdue University*, 458 F.3d 620, 628 (7th Cir. 2006) ("A court's role [on summary judgment] is not to evaluate the weight of the evidence, to judge the credibility of the witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable [material] fact."). As such, Defendants' Motion for Summary Judgment as to the unreasonable seizure claim is **DENIED**.

**B. False Arrest**

Defendants also assert that they are entitled to summary judgment on Plaintiffs' false arrest claim, arguing that probable cause existed for the arrest based on the totality of the circumstances. In their Complaint, Plaintiffs claim that they were unlawfully arrested without probable cause under the Fourth Amendment when they were not free to leave after Reichert issued Huff a traffic warning.

"A seizure occurs when a reasonable person . . . would believe that his liberty has been restrained." *U.S. v. Lewis*, 608 F.3d 996, 1000 (7th Cir. 2010). The Fourth Amendment permits police officers to stop and temporarily detain a person for questioning and for a limited investigation if the police have reasonable suspicion that the person has committed or is about to commit a crime. *United States v. LePage*, 477 F.3d 485, 487 (7th Cir. 2007). This type of seizure arising from a traffic stop is governed by the principles of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). An arrest, on the other hand, requires probable cause. *See United States v. Vega*, 72 F.3d 507, 515 (7th Cir. 1995). "If probable cause to arrest is found to exist, it 'is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest.'" *Jackson v. Parker*, 627 F.3d 634, 638 (7th Cir. 2010) (quoting *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006)). "Probable cause exists if an officer reasonably believes, in light of the facts known to [him] at the time, that a suspect had committed or was committing an offense." *Jackson*, 627 F.3d at 638 (quoting *United States v. Reed*, 443

Page 7 of 13

F.3d 600, 603 (7th Cir. 2006)). "A probable cause determination 'relies on the common-sense judgment of the officers based on the totality of the circumstances.'" *Id.*

Defendants claim that there was probable cause for the arrest based on the totality of the circumstances. In making this assertion, Defendants rely on the following facts: Plaintiffs' vehicle crossed the center line without using a turn signal; Seaton appeared nervous and apprehensive to Reichert; Huff stated his address to be something different than that listed on his driver's license; Huff had a temporary insurance card; Huff's vehicle had out of state license plates; the portion of the Interstate 55/70 at which they were pulled over on was commonly used for drug and gun trafficking; a routine criminal background check revealed Huff to have charges of marijuana cultivation (California), battery with an injury and driving under the influence; Huff only denied "personal knowledge" of any drugs or guns being in his vehicle; and it was only later that Huff flatly denied that there were drugs, money or weapons in his car at the time he accused Reichert of profiling him. (*See* Doc. 13).

With respect to the first fact that Plaintiffs' vehicle crossed the center line without using a turn signal, the Court has already ruled this to be a disputed material fact. Another factor which figured prominently in Defendants' probable cause argument is Reichert's subjective assessment of Seaton as acting extremely nervous during the traffic stop. Plaintiffs dispute this fact as well. The Court is unable to tell from the video whether Seaton appeared "nervous and apprehensive," as he is sitting in the car and obstructed from the camera's view. Moreover, the Court recognizes that it is certainly not uncommon for most citizens- whether innocent or guilty- to exhibit signs of nervousness when confronted by a law enforcement officer. The Court also recognizes that while this factor is relevant to the analysis when viewed as a whole, it is of limited significance in determining probable cause on its own. *See U.S. v. Williams,* 76 Fed. Appx. 728, 730 (7th Cir. 2003); *see also U.S. v. Tinnie,* 629 F.3d 749,

757 (7th Cir. 2011) (Hamilton, J., dissenting) (citing *United States v. Simpson*, 609 F.3d 1140, 1147 (10th Cir. 2010). Regardless, it is apparent from the record that there is a genuine issue of fact as to Seaton's nervousness. Because two of the facts relied upon by Defendants for their probable cause analysis are in dispute, it is apparent that genuine issues of material fact exist as to the false arrest claim. The Court is not convinced that the remaining facts emphasized by Defendants support a finding of probable cause on their own. As such, Defendants' Motion for Summary Judgment as to Plaintiffs' false arrest claim is **DENIED**.

### C. Unlawful Search of Person

Defendants also seek summary judgment on Plaintiffs' unlawful search of person claim, asserting that Reichert possessed the reasonable suspicion necessary for a pat down search.

Officers who conduct routine traffic stops may perform a pat down of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous. *See Arizona v. Johnson*, 555 U.S. 323, 332, 129 S.Ct. 781, 787 (2009). "The standard for a pat-down search is less demanding than probable cause and requires only 'a minimal level of objective justification for making the stop.'" *U.S. v. Kenerson*, 585 F.3d 389, 392 (7th Cir . 2009) (citing *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)). "Officers are entitled to consider practical considerations of everyday life, as well as the prevalence of criminal activity in a particular location." *Kenerson*, 585 F.3d at 392. Courts determine reasonable suspicion based on a totality of circumstances rather than isolated events. *Id.*

Defendants assert that the same combination of facts mentioned above that allegedly justify probable cause for the arrest of Plaintiffs also justify a reasonable suspicion that Plaintiffs were armed and dangerous. As the Court has previously mentioned, two of these factors, one of them being the sole justification for the initial traffic stop, are in dispute. Further, the Court is not convinced that the

remaining factors taken together are sufficient to support a finding of reasonable suspicion that Plaintiffs were armed and dangerous.

Defendants further assert that Huff consented to the pat down search. This argument is unavailing. If the *Terry* stop itself is unlawful, then any subsequent consent obtained would be invalid. *See U.S. v. Drayton*, 536 U.S. 194, 208, 122 S.Ct. 2105, 2115 (2002) ("any consent to search was plainly invalid as a product of the illegal seizure"); *see also Florida v. Royer*, 460 U.S. 491, 507-508, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality opinion) ("[T]he consent was tainted by the illegality and . . . ineffective to justify the search"). Because there is a genuine issue of material fact regarding the lawfulness of the initial traffic stop, the fact that Huff might have consented does not warrant a granting of summary judgment on this issue. As such, Defendants' Motion for Summary Judgment as to Plaintiffs' claim of unlawful search of person is also **DENIED**.

### D. Unreasonable Search of Vehicle

Defendants also seek summary judgment on Plaintiffs' unlawful search of vehicle claim asserting that the drug sniffing canine's positive alert gave Reichert the probable cause necessary to search the car. The use of a drug sniffing dog during a traffic stop does not constitute a search. *See United States v. Taylor*, 596 F.3d 373, 377 (7th Cir. 2010). Further, a canine's alert can elevate a reasonable suspicion to probable cause. *See United States v. Ganser*, 315 F.3d 839, 844 (7th Cir. 2003). Here, Plaintiffs' question the validity of the alert itself. Specifically, Plaintiffs assert that the only evidence the Court has of the alert is Reichert's representation of the event, as the alleged alert took place at the front of Plaintiffs' car, which was obscured from the police camera. Plaintiffs question many facts surrounding the dog alert, such as: the accuracy of the dog; the training of the dog; the extent to which the dog was manipulated to respond; and whether an alert actually occurred at all. Since the filing of Plaintiffs first response brief, Plaintiffs have obtained some data regarding the dog's

reliability; however, they claim that there remains various data to be gathered.

As the Supreme Court stated last month in *Florida v. Harris*, "even assuming a dog is generally reliable, circumstances surrounding a particular alert may undermine the case for probable cause- if, say, the officer cued the dog (consciously or not), or if the team was working under unfamiliar conditions." *Florida v. Harris*, No. 11-817, 2013 WL 598440, at *6 (Feb. 19, 2013). "[A] defendant must have an opportunity to challenge evidence of a drug detection dog's reliability, whether by cross-examining the testifying officer or by introducing his own fact or expert witnesses." *Id.* Here, Plaintiffs challenge the reliability of the alert and are entitled to pursue further discovery on this matter. Because there is a genuine issue of material fact regarding the reliability of the particular alert, Defendants' Motion for Summary Judgment as to Plaintiffs' claim for unreasonable search of vehicle is also **DENIED**.

### E.  Plaintiff's Counts 5 through 8

Plaintiffs also bring a §1983 *Monell* claim against the City of Collinsville (Count 5), and a state law tort claim of intentional infliction of emotional distress (Count 6), seeking *respondeat superior* against City of Collinsville (Count 7) and indemnification pursuant to 745 ILCS 10/9-102 (Count 8). Because Counts 5 through 8 are dependent upon Counts 1 through 4, as conceded by Defendants, these counts should proceed through discovery as well.

### F.  Qualified Immunity as to all Counts

By separate motion (Doc. 25), Defendants argue that they are entitled to qualified immunity with respect to all of Plaintiffs' claims. Pursuant to this defense, "police officers are entitled to qualified immunity for actions taken during a stop or arrest insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Smith v. City of Chicago*, 242 F.3d 737, 744 (7th Cir. 2001) (internal quotations omitted). "There is a

Page 11 of 13

two-step sequence for resolving government officials' qualified immunity claims: A court must decide (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) if so, whether that right was "clearly established" at the time of the defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 223-224, 129 S.Ct. 808, 816, 172 L.Ed.2d 565 (2009). The Court must view disputed facts in the light most favorable to the party opposing the motion. *See Payne v. Pauley*, 337 F.3d 767, 775 (7th Cir. 2003). Finally, precedent makes clear that "the doctrine of qualified immunity leaves 'ample room for mistaken judgments' by police officers." *Payne*, 337 F.3d at 776 (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 106 S.Ct. 1092, 89 L.E.2d 271 (1986)). It protects all but the "plainly incompetent [or] those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534 (1991). Qualified immunity protects those officers who make a reasonable error in determining whether there is probable cause to arrest an individual. *Belcher v. Norton*, 497 F.3d 742, 749 (7th Cir. 2007).

Defendants' qualified immunity defense fails due to the numerous factual disputed issues regarding each of Plaintiffs' claims. As explained above, the Court finds that there are material issues of fact as to whether Reichert actually observed a traffic offense being committed, whether Reichert witnessed nervous and apprehensive behavior on the part of Seaton, and whether Reichert conducted a proper dog sniff search. These disputed facts go to whether Reichert had probable cause or whether "a reasonable officer could have mistakenly believed probable cause existed." *Humphrey v. Staiak*, 148 F.3d 719, 725 (7th Cir. 1998). Thus, these questions of fact preclude summary judgment not only on Plaintiffs' constitutional claims but also on Defendants' qualified immunity claim. Accordingly, Defendants' Motion for Summary Judgment Based on Qualified Immunity (Doc. 25) is also **DENIED**.

## V.   CONCLUSION

For the reasons stated herein, the Court **DENIES** Defendants' Motion for Summary Judgment (Doc. 13) and **DENIES** Defendants' Motion for Summary Judgment Based on Qualified Immunity (Doc. 25). Accordingly, the Court lifts the discovery stay and directs the parties to contact Magistrate Judge Frazier for a Rule 16 conference regarding a revised scheduling order.

**IT IS SO ORDERED.**

DATED:   March 14, 2013

s/ Michael J. Reagan
MICHAEL J. REAGAN
United States District Judge

**Illinois State Statutes-Motor Vehicle Code**

**625 ILCS 5/11-709(a)**

Sec. 11-709. Driving on roadways laned for traffic. Whenever any roadway has been divided into 2 or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply.

(a) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

**625 ILCS 5/11-804**

Sec. 11-804.  When signal required.

(a) No person may turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in Section 11-801 or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety. No person may so turn any vehicle without giving an appropriate signal in the manner hereinafter provided.